to my books. If the evidence in this case were overwhelming, and it's not, I don't think we'd be here. The fact of the matter is, this could have been a fairly close case. The witnesses initially interviewed failed to pick the defendant out of a photo lineup. At trial, of course, they identified him. He's the only one sitting at council table. That's not unusual. Yeah, there was a video. The magistrate and or the state court said, well, he was virtually videotaped committing the act. But in fact, what was videotaped was a jacket that was attributed to him by a former girlfriend. A subsequent search of the house did not find the jacket. Found other stuff, which was not conclusively or inferentially perhaps, but not conclusively attributed to my client or to the murder. So what we have is a cop coming back in and saying, oh, yeah, and oh, by the way, everybody, the witness who just testified said, in effect, the defendant said he was going to kill me. That's not the exact words. We know that. But that's what the jury heard. And no amount of jury instruction is going to cure that deficit. Was there a jury instruction? I'm sorry? Was there a jury instruction? There was an admonition. I'm sorry. What did the admonition say? This is to be considered by you for impeachment purposes only to... My point is, this is the kind of thing that happens all the time. Evidence comes in and has the potential to slop over into an area in which it doesn't belong. The court gives an admonition, and we almost always respect those admonitions. Yes, it does. I agree. However, the Supreme Court has said there are some contexts in which the risk that the jury will not or can not follow instructions is so great. See, that's just a generalized statement. Sometimes we mine cases for generalize. Have you read United States versus Abel? So we looked at Supreme Court precedent. You probably haven't, but in Abel, the court said, a term used in the common law of evidence to describe the relationship between a party and a witness which might lead the witness to slant unconsciously or otherwise as testimony in favor of or against a party. Bias may be induced by witnesses like, dislike, or fear. Correct. That's perfectly all right. So why is what the court told us in Abel is appropriate? The context. It depends on the context. In this case, it was improper. What's the case I cite? Duckworth. The Seventh Circuit case. I think it's Duckworth. Do we really care about the Seventh Circuit? I mean, aren't we told to look to United States Supreme Court for guidance in this area? Correct, but there are no Supreme Court cases that deal with this exact issue that I've been able to find. Abel says fear of a relationship because it relates to whether the testimony be slanted or not. And that's a correct statement, but there are also statements that say where the, there are also Supreme Court cases which talk about fundamentally unfair trial proceedings. And this, the admission of this particular evidence, when everybody in the room, everybody in the room knew that there were no threats made by this defendant to this witness or inferring this, everybody in the room knew that. Yet the evidence comes in so that the jury can infer it. That renders the trial fundamentally unfair. And the Supreme Court says when a trial is unfundamentally unfair because of a state... Where was the evidence of threats one way or the other? I didn't see any. That this witness was just scared of the defendant? I am afraid this witness, I am afraid this defendant is going to kill me. Now, is this anyone threatened? You know. Has nothing to do with threats, right? Are you afraid for your safety? Yes. Is the inference drawn from that when everyone knows there were no threats made? There's no basis for his fear. There is no, everybody in the room knew there's no basis for this witness's fear. What's the problem? If there's no threats and they know this is irrational, they still know that he's afraid of the party. Again, I go back to the Abel case. You hadn't read it though. Is that, is that the point? I had the good fortune of arguing that in the Supreme Court, which I'm very familiar with it. I was going to say that fear of the party is something that you can get into. But that fear has to be founded. It has to be grounded in something. Where does it say that? I mean, this guy was charged with murder. An ordinary person might assume that you might be afraid of this guy. Somewhere in the cases that I cited, somewhere in the cases I cited, and it might be the Seventh Circuit and I know the court is looking at this case of the Seventh Circuit. I'm sorry? I mean, it's not a controlling precedent. It is not a controlling precedent, but it certainly is instructive. The threat has got to be well grounded or at least grounded in something. He can't, the witness can't conjure up a threat. You know, I can conjure up all kinds of threats, all kinds of reasons why I don't want to be here, but that's not the truth. It's not a case involving threats. He denies threats. There's no evidence of I mean, this is maybe an irrational fear. Nevertheless, it was a real fear, according to the witness and the witness's behavior supports that. But then aren't we faced with, aren't we faced with the cases and aren't we faced with the cases that talk about the evidence of fear as a result of a threat because it is inherently risky to admit that it is admitted only if it adds something to the witness, for example, some kind of impeachment. But as the trial court said, he's already expressed his fear. He has already said he is afraid to be here. He has already said he has concerns. But what the trial judge did is permit a specific instance, a specific reference, a reference to the defendant, which wasn't true, which was without basis. The trial judge initially considered not admitting it. And very well may have decided not to. And we wouldn't be here, but he did admit it and he admitted it to the to the detriment of the defendant. That's your argument. And I'm sticking to it. Good for you. I say some time for rebuttal. Yeah, whatever's left. I may and I may not because I'm afraid. Thank you. Thank you, counsel. From the state. Good morning. May it please the court. Melissa Pond, Deputy Attorney General for Appellee McGrath. I'm going to make my comments fairly brief in light of the court's questions. I'm not going to be taking any positions on the case. I won't, but I'm not going to belabor the fact that this is not a threats case. What I would like to do is briefly recap what the state appellate court found the overwhelming evidence in this case, that he was virtually videotaped committing not the act of the court of appeal decision. Yes, the state court of appeal decision. But although the district court also used the word overwhelming several times, that he was visually virtually videotaped committing not the act, as petitioner says, but the murder of Mason, that his ex-girlfriend recognized Jones from a still video from the that evening, as did two employees from Baskin Robbins who had encountered Jones earlier that evening. Jones owned a revolver with a brown handle. It matches the description of the revolver used in the robbery. There was an unusual bullet. A shell casing was found matching that bullet in Jones' garbage can. Both the robbery victims ID Jones from the Baskin Robbins surveillance video earlier that evening. One ID Jones from a photo lineup. And all the witnesses ID Jones from the still photo taken from the cell station surveillance tape. And of course all the witnesses ID Jones in court. Money consistent with the robbery that was taken from the pizza parlor robbery was found under Jones' mattress. So in light of all this overwhelming evidence, why did the prosecutor need to try to put in this evidence that really in fairness implied that the witness was threatened or had some fear of the defendant? Well, as the courts pointed out, the prosecution is entitled to bring forth evidence to explain the Grimaldo's obvious evasiveness on the stand. He was a 15-year-old boy, 14 at the time that this happened. It goes on to say, are you nervous now? Yes. I don't make you nervous, do I? In other words, it went beyond just he's nervous. You can't read this transcript without the clear implication that he's afraid of the defendant, right? Sure, but then you're arguing that it's cumulative. He also says, has anybody threatened? I'm not arguing. I'm just pointing out, I just don't, I mean, you start off by saying the evidence was overwhelming. Right. But then we have a very real appellate issue that's injected into this case by trying to imply that the defendant either is threatening or he's a person that someone ought to be afraid of. Respect. I don't understand the probative value of it. The probative value is that Grimaldo was clearly afraid. He said he was not afraid to tell the truth if he knew the truth, and that he basically says that he's not afraid of the, he basically says that. He's not afraid of the prosecutor. Well, he says he's not afraid of the prosecutor, but he also says that his evasiveness is not due to being afraid. He says his evasiveness is, oh, if I knew the truth, I would tell the truth. Well, this is direct evidence contradicting that statement. This is evidence that right before he entered the courtroom, the reason that he was being evasive, the reason that he was so forgetful, the reason he couldn't remember anything, he said to the detective. Right. So then you put on the detective saying he was afraid to testify because he thought Mr. Jones was going to have him killed. What is the, I don't understand the probative value of that. Well. Except to prejudice the jury against the defendant. No, I, you know, the state appellate court found that the probative value of it is that it provided a reasonable explanation for Grimaldo's evasiveness and his fear, other than simply the fact that he wasn't credible. So it gave the jury an explanation for why is this witness claiming not to be able to remember anything that happened that night. He said that he perhaps drank one beer, but that certainly wouldn't be enough to make him forget somebody coming back into the automobile and saying I shot the clerk while laughing and eating corn nuts. So, I mean, this would obviously be an extremely traumatic experience. And he comes on to the stand and he says that he's virtually forgotten everything that happened. And he says he's afraid. And you go on to say, are you nervous now? Yes. I don't make you nervous. No. Oh, good. Are you afraid to tell the truth? You'll be hurt. And he goes, no, if I tell the truth, I would tell the truth, but I don't know. And perhaps he was afraid of simply testifying. Testifying could be extraordinarily scary for a 15-year-old boy. And that's one of the things the court says. This explains a different reason for his fear, which provides a more reasonable explanation for not being able to remember anything. If I might interrupt for a second. Sure. He goes on. And then the testimony is he told me that he was afraid that the defendant would kill him. Now, you already have the explanation of the fear. So you have it. He says he's afraid. So the jury already knows that his testimony is maybe colored. Maybe he's afraid to tell the truth. But then the explanation is given that he's afraid of the defendant. What possible additional probative value does that have that doesn't outweigh its prejudicial effect on the defendant? Well, I don't believe the prejudicial effect was very strong in the first place as far as the threats were not attributed to Jones. It describes the reason that the witness was fearful, and it certainly provides a more reasonable explanation for his fear. And evidence the witness is afraid to testify is relevant to the credibility of that witness. And fearful of retaliation is relevant. Even if there's no basis for that fear, it's relevant for the jury to understand that witness's credibility. And as Justice Trott pointed out, the Abel case says that. You can also look at Gomez v. Guerrero, Thomas, any of these cases that the Thompson court distinguished itself from, any of this line of cases, all of them say that this type of testimony is clearly relevant to explain a witness's credibility. It really doesn't have a reflection on Jones. It just explains. Prosecution witness. You're basically teaching the prosecution witness. The prosecution puts down a witness that the prosecution knows is not going to say anything relevant. Then they say, well, you're afraid of the defendant, all but. And then you say, well, he was afraid of the defendant. Well, have you ever tried a domestic violence case? You put them on the stand just to impeach them. I mean, certainly there are witnesses that, you know, that the prosecution puts on the stand knowing that they're going to say, I forgot everything that happened. Knowing that, you know, the whole purpose of putting that witness on the stand is to impeach them with their prior statement. And you know they're going to be to, well, his statement to the detective that Jones had basically killed the convenience store clerk and was laughing and eating corn nuts at the time he entered the car. Let me switch gears here just a second. You've got a confrontation clause violation in this case. Yes. Luna, there was some possibility that Luna might have been cross-examined and a different motivation would have come out. And everybody seems to agree that the defendant's right to confront witnesses was violated in this case. And how are we so sure that that didn't have any substantial and injurious effect or was harmless beyond a reasonable doubt? Well, what's not in Petitioner's brief is the applicable standard of review, which is AEDPA. And the state appellate court, and this brings me back to what I started with, the absolutely overwhelming evidence in this case. The error that you refer to is not a structural error. And both the state appellate court and the district court, when they reviewed this, said in light of this evidence, the federal district court said it would not have mattered had Jones not set foot into the courtroom. Had he not set foot into the courtroom. And if you look at Luna's testimony, Luna's testimony wasn't particularly helpful to the state. It certainly wasn't as helpful as Grimaldo's. Luna's a convicted felon. Luna said he drank 18 beers that night. Luna couldn't remember anything. Luna's testimony was far more inconsistent. Even his statements to Detective Martin had inconsistencies and lies. Whatever statements he made on the stand were inconsistent. And he mostly claimed to have forgotten everything that he ever said. He was not a particularly helpful or credible witness. So in light of the absolutely overwhelming evidence that Jones committed this the state appellate court used the Chapman standard. The Chapman standard is higher than the Brecht standard. And that is entitled to deference. Nothing that Petitioner has said here today overcomes that standard. Nothing overcomes the findings of the state appellate court. In this case, and Petitioner is entitled certainly to a fundamentally fair trial. But that's all he's entitled to. He is not entitled to a perfect trial. In this case, he received that fundamentally fair trial. Thank you. Thank you. Thank you. Ever so briefly. A substantial and injurious effect. Luna was on camera. Luna was perfectly ID'd. Luna was the co-defendant or could have been one of the co-defendants but was not charged. He was on camera in the shell station. He was ID'd as being on camera in the shell station. His testimony was inconsistent. He could just as easily have been portrayed as the killer. Luna was not cross-examined. That's the second part of my argument. At least effectively the trial court did not permit impeachment. Did not permit trial counsel to question him about the fact that he had not been prosecuted. What did Luna say that was so damaging to your client? Not a lot. No, Luna didn't. No, it was Grimaldo who said damaging things about the client. Luna did not. But he could have been portrayed as the person. Right, but basically the key issue here is the confrontation clause. So what on cross-examination would have made the difference in the verdict? I think that's the key argument you've got to win. It would have painted him as a really bad guy. And that he had cut some kind of a deal with the government that had not been thoroughly disclosed. It's the same argument with Napoo. Now we're really speculating though. I mean, have you ever come forth with any indication that a deal was cut with Luna? No, I haven't. And nobody in trial counsel wasn't able to explore that. But certainly for trial counsel to be able to stand up ultimately in closing and say he wasn't prosecuted. Okay, ask yourselves why he wasn't prosecuted. That's effectively what prosecutors do. It's what Napoo is all about. But Napoo, there was a deal, undisclosed deal. I understand that. I mean, there's no doubt about that. But we as defense lawyers are entitled to explore that with the witness on the stand. Was there any attempt to develop any of this in federal court in an evidentiary hearing in habeas? No, no there wasn't. Ah, my footnotes speak well to that, Your Honor. Because counsel should have been appointed from the get and he wasn't. And he should have been appointed at the first level in district court for that very reason and other reasons. It wasn't until pro se appellant client got to this court that this court appointed counsel. I mean, I'm starting way behind the eight ball on that. But, you know, it is what it is. Your time has expired. Thank you very much. Thank you very much. Jones v. McGrath will be submitted and we'll proceed to the next case on the argument calendar, Dering v. McDaniel.
judges: Ferguson, Trott, Thomas